BARBARA M. HAWKINS           \*      IN THE
1028 Pultney Lane
Glen Burnie MD 21060         \*      UNITED STATES

     Plaintiff              \*      DISTRICT COURT

       v.                \*      FOR THE DISTRICT

                          \*      OF COLUMBIA

Todd Blanche
Acting, U. S. Attorney General     \*
U.S. Department of Justice
Civil Rights Division         \*
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530       \*
                          Civil Action No.
     Serve on:              \*
     Civil Process Clerk
     United States Attorney's Office    \*
     601 D Street, NW
     Washington, DC 20230      \*

                          \*
     Defendant.
\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT

     **COMES NOW**, BARBARA HAWKINS, by and through her attorney, Paul V. Bennett,

Esq., and Bennett Legal Services, Inc., and hereby sues Todd Blanche, Acting, U. S. Attorney

General, the U.S. Department of Justice (hereinafter "Defendant") and states as follows:

## JURISDICTION AND VENUE

1.     This action arises from allegations of illegal employment discrimination and retaliation,

     pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

     (hereinafter referred to as "Title VII"), and the Age Discrimination in Employment Act

     of 1967, as amended, 29 U.S.C. § 621, *et seq.* (hereinafter "ADEA").

2.     This Court has jurisdiction pursuant to Title VII.

1

3. This Court has jurisdiction pursuant to ADEA.

4. That all the actions complained of herein took place at the at the Administrative Office of the United States Courts ("AOUSC") in the Thurgood Marshall Federal Judiciary Building in Washington, D.C.

5. That at all times relevant hereto, Defendant has been a federal government agency employing twenty (20) or more persons and is an "employer" within the meaning of Title VII, and ADEA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On or about July 6, 2023, Plaintiff timely contacted Defendant's EEO Office (hereinafter "EEO") to file an EEO claim regarding her termination which occurred on June 2, 2023.

7. Following the DOJ's investigations with respect to her EEO complaint, Plaintiff requested hearings with the Commission under EEOC Case Nos. 570-2024-01365X.

8. On January 13, 2026, Plaintiff was issued a Final Agency Order with respect to Plaintiff's EEOC Complaint, Agency No. USM-2023-00946, EEOC Case No. 570-2024-01365X.

9. In accordance with Title VII, and the Code of Federal Regulations ("CFR)", Plaintiff properly exhausted her administrative remedies before timely filing suit.

## FACTS COMMON TO ALL COUNTS

10. Plaintiff is a female over the age of forty (40) (DOB:1963) and is a member of protected classes under Title VII and ADEA. Defendant was aware at all times herein of Plaintiff's sex, and age.

2

11. At all relevant times, from December 27, 2021, through June 2, 2023, Plaintiff was employed as a District Supervisor ("DS") by Paragon Security Systems ("Paragon"), a private security contractor operating under a federal contract at the Administrative Office of the United States Courts ("AOUSC") in the Thurgood Marshall Federal Judiciary Building in Washington, D.C. From approximately December 27, 2021, to June 2, 2023, Plaintiff's primary duties included, but were not limited to ensuring all security posts were properly manned by security officers and proper procedures were followed in inspection, handling of confiscated unauthorized items, and identification by employees and visitors.

12. As of June 2, 2023, Plaintiff was paid approximately ninety-one thousand, five hundred forty-nine dollars ($91,549.00) in salary per year. At all times relevant hereto, Plaintiff met or exceeded the reasonable performance expectations for her position as a District Supervisor for 45 security officers and 3 lead security officers working for Paragon Security Systems, specifically in WDC, 12th Circuit.

13. Plaintiff reported nominally to Lawrence Frost ("CM Frost"), Paragon's Contract Manager.

14. From December 2021 through December 22, 2023, Christopher Dammons ("JSI Dammons"), younger male, served as the U.S. Marshals Service Judicial Security Inspector ("JSI") for AOUSC and National Court and acted as the Contracting Officer's Representative ("COR").

15. At all relevant times, JSI Dammons exercised substantial control over the terms and conditions of Plaintiff's employment, including hiring, discipline, scheduling, and

removal, such that he functioned as Plaintiff's joint employer and *de facto* an agent of Paragon.

16.    JSI Dammons improperly and pervasively interfered with Paragon's hiring decisions, effectively acting as a decision-maker. In anticipation of contract renewal, Paragon management acquiesced to his directives.

17.    Acting outside the scope of his authority, JSI Dammons caused the hiring of his protégé, William Thomas, younger male. Similarly, later on, JSI Dammons caused Plaintiff's removal by directing that the U.S. Marshals Service issue a letter asserting a loss of confidence in Plaintiff and requesting her removal from the contract.

18.    JSI Dammons exercised authority over staffing decisions, including approving overtime assignments for special events.

19.    The U.S. Marshals Service controlled Plaintiff's worksite and provided the tools, materials, and equipment necessary for her job performance.

20.    On or about April 17 and 18, 2023, multiple female Court Security Officers ("CSOs"), including CSO Mona Lynch ("CSO Lynch"), sought Plaintiff's guidance on filing complaints against JSI Dammons alleging harassment, gender discrimination, and retaliatory targeting.

21.    Plaintiff advised these employees regarding their rights and complaint procedures, constituting protected activity.

22.    On April 29, 2023, Plaintiff informed CM Frost that CSO Lynch had filed an Equal Employment Opportunity ("EEO") complaint against JSI Dammons.

23.    On or about April 29, 2023, JSI Dammons became aware of the EEO complaint, its filing, and knew of Plaintiff's involvement in assisting CSO Lynch.

24. Shortly thereafter, and with particular intensity beginning in or about May 2023, JSI Dammons initiated and escalated a pattern of retaliatory and discriminatory conduct against Plaintiff.

25. JSI Dammons made frequent, unannounced visits to Plaintiff's worksite and conducted impromptu meetings with CSOs while deliberately excluding Plaintiff.

26. During these meetings, he favored a younger male supervisor, Phillip Franklin, who had not engaged in protected activity.

27. JSI Dammons made age-based discriminatory remarks, including statements to the effect that "getting older takes a toll on work ethics."

28. Beginning on or about May 1, 2023, JSI Dammons repeatedly interfered with Plaintiff's supervisory authority and job duties.

29. His conduct was sufficiently aggressive and hostile that Plaintiff reasonably feared him and avoided contact to the extent possible.

30. In or about May 2023, JSI Dammons excluded Plaintiff from operational decision-making by directing DS Franklin to develop and present scheduling changes impacting Plaintiff's site, without notice to or input from Plaintiff.

31. On multiple occasions, JSI Dammons commandeered Plaintiff's workspace, preventing her from performing her duties.

32. On or about May 15, 2023, JSI Dammons occupied Plaintiff's desk and used her assigned internet access, preventing her from attending a scheduled meeting with CM Frost.

33. Plaintiff complained that such conduct interfered with her ability to perform her job.

34. Following Plaintiff's complaints, JSI Dammons intensified his retaliatory conduct.

5

35. At all relevant times, Plaintiff was performing her job satisfactorily, and no legitimate performance deficiencies were identified or communicated to her.

36. JSI Dammons attempted to coerce Plaintiff into violating company policy by refusing to post required job vacancy announcements.

37. JSI Dammons neglected essential duties, including properly deputizing CSOs and updating post orders, while simultaneously undermining Plaintiff's authority.

38. He fostered a hostile work environment by forming alliances and targeting employees who engaged in protected activity.

39. JSI Dammons maintained an inappropriate personal relationship with CSO Monicamarie Hawkins, which influenced his treatment of other employees and operational decisions.

40. Despite lacking authority, JSI Dammons routinely altered Plaintiff's assignments, schedules, and staffing decisions, including roll call and rover assignments.

41. On or about April 27, 2023, JSI Dammons relieved a CSO from duty without notifying Plaintiff, further undermining her authority.

42. In violation of the governing Statement of Work, JSI Dammons assumed direct supervisory control over CSOs and issued daily instructions.

43. He demanded that Plaintiff discipline CSO Lynch based on unfounded allegations and insisted on issuing a Performance Standard Violation ("PSV") despite Plaintiff's documented explanation that no violation had occurred.

44. JSI Dammons improperly required Plaintiff to report investigative matters directly to him, bypassing established reporting protocols.

45. JSI Dammons repeatedly threatened Plaintiff with termination, including in front of subordinate employees.

46. He made explicit statements asserting his authority to remove Plaintiff, including, "I'm the man here, and I can and will get rid of you."

47. Ultimately, JSI Dammons used his authority and influence to cause Plaintiff's termination.

48. Similarly situated employees outside Plaintiff's protected classes, including Phillip Franklin, were not subjected to comparable treatment, threats, or termination.

49. At all times relevant herein, Plaintiff met and/or exceeded Defendant's legitimate job expectations.

## COUNT I
## GENDER DISCRIMINATION
### (Disparate Treatment)
**Title VII of the Civil Rights Act of 1964, as amended,**
**42 U.S.C. § 2000e, *et seq.***

50. Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. Plaintiff was qualified and satisfactorily performing her duties as a District Supervisor with Paragon.

52. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her sex/gender (female) – a protected class under Title VII.

53. That the aforementioned acts constitute unlawful practices pursuant to Title VII.

54. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex/gender (female).

7

55. That the unlawful employment practices complained of above were intentional.

56. That similarly situated male employees, specifically DS Phillip Franklin, outside the protected class were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, receiving public criticism, and being retaliated against.

57. Defendant's adverse employment actions to include Plaintiff's removal were thereby motivated by discriminatory animus.

58. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

59. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT II**
**AGE DISCRIMINATION**
**(Disparate Treatment)**
**Age Discrimination in Employment Act of 1967, as amended,**
**29 U.S.C. § 621, *et seq.***

60. Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

61. Plaintiff was qualified and satisfactorily performing her duties as a District Supervisor with Paragon.

62. That Defendant carried out the aforementioned acts of discrimination against Plaintiff on the basis of her age (born in 1963) – a protected class under the ADEA.

63. That the aforementioned acts constitute unlawful practices pursuant to the ADEA.

8

64. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age (born in 1963).

65. That the unlawful employment practices complained of above were intentional.

66. That similarly situated younger employees, specifically DS Phillip Franklin, outside the protected class were not subjected to the same or similar adverse employment actions that Plaintiff endured, including, but not limited to, receiving public criticism, and being retaliated against.

67. That Plaintiff's age was the "but-for factor" behind the described adverse treatment.

68. That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

69. That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

 WHEREFORE, Plaintiff prays for relief as more fully set forth below.


**COUNT III**
**RETALIATION**
**(Adverse Actions and Protected Activity Deterrents)**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42  U.S.C. § 2000e, *et seq.***

70. Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

71. On or about April 17 and 18, 2023, multiple CSOs, including CSO Mona Lynch, sought Plaintiff's guidance regarding the filing of complaints against JSI Dammons, alleging harassment, gender discrimination, and retaliatory targeting.

72. Plaintiff provided advice to these employees concerning their rights and the applicable complaint procedures, thereby engaging in protected activity.

73. On April 29, 2023, Plaintiff informed CM Frost that CSO Lynch had filed an EEO complaint against JSI Dammons.

74. On or about April 29, 2023, JSI Dammons became aware of CSO's Lynch EEO complaint, and further knew of Plaintiff's involvement in assisting CSO Lynch.

75. The subsequent adverse employment action to include termination, as set forth in the above-referenced facts common to all counts and *Supra* at ¶¶ 29-49, amounted to illegal retaliation, as Defendant's actions were motivated to punish Plaintiff for engaging in legally protected activities and were intended to dissuade others from engaging in similarly legally protected activities. Indeed, the net effect of Plaintiff's removal was to likely dissuade others from engaging in legally protected activities.

76. That the aforementioned acts of retaliation for complaining about illegal employment practices constituted unlawful employment practices pursuant to Title VII.

77. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

78. That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

79. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT IV
## RETALIATION
### (Adverse Actions and Protected Activity Deterrents)
### Age Discrimination in Employment Act of 1967, as amended,
### 29 . S.C. § 621, *et seq.*

80.    Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

81.    On or about April 17 and 18, 2023, multiple CSOs, including CSO Mona Lynch, sought Plaintiff's guidance regarding the filing of complaints against JSI Dammons, alleging harassment, gender discrimination, and retaliatory targeting.

82.    Plaintiff provided advice to these employees concerning their rights and the applicable complaint procedures, thereby engaging in protected activity.

83.    On April 29, 2023, Plaintiff informed CM Frost that CSO Lynch had filed an EEO complaint against JSI Dammons.

84.    On or about April 29, 2023, JSI Dammons became aware of CSO's Lynch EEO complaint, and further knew of Plaintiff's involvement in assisting CSO Lynch.

85.    The subsequent adverse employment action to include termination, as set forth in the above-referenced facts common to all counts and *Supra* at ¶¶ 29-49, amounted to illegal retaliation, as Defendant's actions were motivated to punish Plaintiff for engaging in legally protected activities and were intended to dissuade others from engaging in similarly legally protected activities. Indeed, the net effect of Plaintiff's removal was to likely dissuade others from engaging in legally protected activities.

86.    The aforementioned complaints with the EEO office constitute "legally protected activities" under ADEA.

11

87. That the aforementioned acts of retaliation for complaining about illegal employment practices constituted unlawful employment practices pursuant to ADEA.

88. That the effect of the practices complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee based upon her legally protected activities.

89. That the intentional retaliatory actions complained of above were done with malice and/or with reckless indifference to Plaintiff's rights.

90. As a direct and proximate result of the Defendant's retaliatory actions, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

**COUNT V**
**HOSTILE WORK ENVIRONMENT**
**Title VII of the Civil Rights Act of 1964, as amended,**
**42  U.S.C. § 2000e, *et seq.***

91. Plaintiff hereby restates and incorporates paragraphs 1 through 49 of this Complaint as though fully set forth herein.

92. That the conduct of Defendant's management constituted unwelcome actions, and behavior that was hostile toward Plaintiff, specifically publicly humiliating comments about Plaintiff, and other challenges to include activism in the form of her EEO protected activities was severe and pervasive making her job close to impossible to perform.

93. The aforementioned actions, and behavior were subjectively offensive to the Plaintiff, which prompted her complaints to EEO and management in an effort to alleviate the hostility.

94. That the effect of the practices complained of above were objectively offensive such that a reasonable person would find that the practices deprived Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her gender, age, and EEO protected activities.

95. That the unlawful employment practices complained of above were intentional, unwelcome, and personally hostile and offensive to Plaintiff.

96. That the aforementioned conduct of Defendant's employees was sufficiently severe and pervasive so as to alter the terms and conditions of Plaintiff's employment and to create an intimidating, hostile and offensive working environment for Plaintiff.

97. That the discriminatory and retaliatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation and mental anguish.

98. That the intentional discriminatory and retaliatory actions of Defendants against Plaintiff, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

99. That Defendant Department of Justice knew or should have known of the aforementioned conduct of its management against Plaintiff and failed to take prompt corrective action.

100. That Defendant Department of Justice is vicariously liable for the conduct of its employees carried out in the course and scope of their employment.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

13

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Barbara Hawkins, Plaintiff, demands judgment

against Todd Blanche, Acting, Attorney General, U.S. Department of Justice as follows:

a. Compensatory damages according to proof;

b. Front pay and back pay;

c. Declaratory relief;

d. Prejudgment and post judgment interest;

e. Award attorney's fees and costs, including expert witness fees, as allowed by law;

f. And for such other and further relief as this Honorable Court deems just and equitable.


Respectfully submitted,

/s/ Paul V. Bennett
Paul V. Bennett, Esq. (DC Bar No. 427358)
Bennett Legal Services, Inc.
5457 Twin Knolls Road, Suite 300
Columbia, Maryland 21045
(410) 353-4994
pbennett@bennettlaw.net


*Attorneys for Plaintiff*

14

## <u>DEMAND FOR JURY TRIAL</u>

Barbara Hawkins, Plaintiff, hereby demands that this matter be tried by jury.

        /s/ Paul V. Bennett
        Paul V. Bennett, Esq. (DC Bar No. 427358)